UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMELIA MARITIME GROUP LTD.,<br><br>                                    Petitioner,<br><br>          v.<br><br>INTEGR8 FUELS INC.,<br><br>                                    Respondent. | Civ. No. _____ |

# PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
# ITS MOTION TO TEMPORARILY RESTRAIN AND
# <u>PRELIMINARILY ENJOIN ARBITRATION</u>

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
William.Bennett@blankrome.com
Noe.Hamra@blankrome.com

Attorneys for Petitioner,
*Amelia Maritime Group Ltd.*

*Counsel:*
William R. Bennett III
Noe S. Hamra

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................1

    A.    The Bunkering of the M/V GOLDEN DESTINY .....................................1

    B.    Sell of the Vessel and Change in Name......................................................2

    C.    Integr8's Claim Against Amelia and the Rotterdam and UAE Proceedings ...........2

    D.    Integr8's Arbitration Demand......................................................................3

ARGUMENT .................................................................................................................................4

POINT I  THE COURT SHOULD STAY THE ARBITRATION BECAUSE THERE IS NO AGREEMENT BETWEEN INTEGRA8 AND AMELIA TO ARBITRATE DISPUTES...........................................................................................4

    I.    Amelia Will Be Irreparably Harmed If It Is Forced To Arbitrate...............................5

    II.    Amelia Is Likely To Prevail On The Merits ................................................6

        A.    Amelia is Not a Signatory to an Agreement to Arbitrate.........................6

        B.    Amelia Cannot be Bound as a Non-Signatory to an Arbitration Agreement That Integr8 Might Have with Another Party............................................7

            1.    Incorporation by Reference...................................................................7

            2.    Assumption ...........................................................................................8

            3.    Veil-Piercing/Alter Ego ........................................................................8

            4.    Estoppel.................................................................................................8

            5.    Agency .................................................................................................9

POINT II  THE COURT SHOULD STAY THE ARBITRATION BECAUSE A COURT OF COMPETENT JURISDICTION ALREADY DETERMINED THAT INTEGR8 HAS NO CLAIM AGASINT AMELIA ...................................10

CONCLUSION ............................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alesayi Beverage Corp. v. Canada Dry Corp.*,
  947 F. Supp. 658 (S.D.N.Y. 1996) ....................................................................................10

*Bronx Household of Faith v. Ed. of Educ.*,
  331 F.3d 342 (2d Cir. 2003)................................................................................................5

*China Shipping Container Lines Co. Ltd. v. Big Port Services DMCC*,
  803 Fed. Appx. 481 (2d Cir. 2020) .....................................................................................6

*Choctaw Generation Ltd. P'ship* v. *Am. Home Assur. Co.*,
  271 F.3d 403 (2d Cir. 2001)................................................................................................9

*Conte v. Justice*,
  996 F.2d 1398 (2d Cir. 1993)............................................................................................10

*Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*,
  658 F.Supp. 809 (S.D.N.Y. 1987) ......................................................................................7

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
  764 F.3d 210 (2d Cir. 2014)................................................................................................4

*Gvozdenovic v. United Air Lines, Inc.*,
  933 F.2d 1100 (2d Cir. 1991), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116
  L.Ed.2d 248 (1991) ............................................................................................................8

*Import Export Steel Corp. v. Mississippi Valley Barge Line Co.*,
  351 F.2d 503 (2d Cir.1965).................................................................................................7

*In re Am. Express Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011)................................................................................................5

*Maryland Casualty Co. v. Realty Advisory Ed. on Labor Relations*,
  107 F.3d 979 (2d Cir. 1997)................................................................................................5

*Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.*,
  782 F.Supp. 28 (S.D.N.Y. 1992).........................................................................................7

*Melwani v. Jain*,
  02 Civ. 1224, 2004 U.S. Dist. LEXIS 16867, 2004 WL 1900356 (S.D.N.Y.
  Aug. 24, 2004) ..................................................................................................................11

*Merrill Lynch Inv. Jvfgrs. v. Optibase, Ltd.*,
  337 F.3d 125 (2d Cir. 2003).......................................................................................4, 5, 9

*Mitchell v. Nat'l Broad. Co.*,
    553 F.2d 265 (2d Cir. 1977)..................................................................................................10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)................................................................4

*Monahan v. New York City Dep't of Corr.*,
    214 F.3d 275 (2d Cir. 2000)..................................................................................................10

*Mosha v. Yandex Inc.*,
    2019 U.S. Dist. LEXIS 169526 (S.D.N.Y. Sep. 30, 2019).......................................................10

*Murphy v. Gallagher*,
    761 F.2d 878 (2d Cir. 1985)..................................................................................................10

*S. Pac. R. Co. v. United States*,
    168 U.S. 1 (1897)..................................................................................................................10

*Sarhank Group v. Oracle Corp.*,
    404 F.3d 657 (2d Cir. 2005)....................................................................................................7

*Shaw Group, Inc. v. Triplefine Int'l Corp.*,
    No. 01 Civ. 4273, 2001 WL 883076 (S.D.N.Y. Aug. 3, 2001) .................................................8

*Smith/Enron Cogeneration Ltd. P'ship* v. *Smith Cogeneration Int'l, Inc.*,
    198 F.3d 88 (2d Cir. 1999)......................................................................................................9

*Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*,
    643 F.2d 863 (1st Cir. 1981)....................................................................................................5

*Stolt-Nielsen Transp. Group B.V v. Edible Oil Trading Corp.*,
    No. 06 Civ. 0703 (NRB), 2007 WL 194182 (S.D.N.Y. Jan. 24, 2007)............................6, 7, 8

*Thomson-CSF, S A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995).........................................................................................4, 7, 8, 9

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)...............................................................4

*Waldman v. Vill. of Kiryas Joel*,
    39 F. Supp. 2d 370 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000)..........................10, 11

## PRELIMINARY STATEMENT

Petitioner Amelia Maritime Group Ltd. ("Amelia") moves this Court for an order staying arbitration demanded by Respondent Integr8 Fuel Services Inc. ("Integr8") relating to Integr8's claim for bunkering services. The following issue is presented by Amelia's motion:

> There is no agreement to arbitrate here between Amelia and Integr8. A court should enjoin an arbitration from going forward if the party resisting arbitration can show irreparable harm and a likelihood of success on the merits. Irreparable harm exists if a party is forced to arbitrate when it has not agreed to do so. Thus, should this Court grant Amelia's preliminary injunction application?

Amelia respectfully submits that, for the reasons fully stated below, the answer to the foregoing question is "yes," and, accordingly, the Court should issue an order staying the arbitration demanded by Integr8.

## STATEMENT OF FACTS

**A. The Bunkering of the M/V GOLDEN DESTINY**

On or about August 20, 2018, Harmony Innovation Shipping Ltd. ("Harmony"), the then charterers of the M/V GOLDEN DESTINY ("Vessel"), entered into a contract with Integr8 for the supply of approximately 430 metric tons of bunkers (marine fuel oil) at a price of USD 487 per metric ton. See Declaration of William R. Bennett III ("Bennett De.") dated December 5, 2022, **Exhibit 5** at p. 4.

Integr8's Sales Confirmation states that the fuel sale is subject to its General Terms and Conditions. Bennett Dec., **Exhibit 5** at pp. 8-15. Integr8's terms and Conditions provide for application of "the federal maritime law of the United States or, should no such law exist on any particular issue, the laws of the State of New York", and arbitration in the City of New York. *See id.* at Clause 13.

1

Integr8, in turn, contracted with Major Bunker Trading Pte. Ltd. ("MBT") to physically supply the fuel to the Vessel. To this end, and in accordance with the contract between Harmony and Integr8, bunkers were provided to the M/V GOLDEN DESTINY at Kohsi Chang, Thailand on August 20, 2018. Bennett Dec., **Exhibit 5** at p. 6. The Bunker Delivery Receipt shows that 430 metric tons of IFO 380 CST fuel oil was lifted onboard the Vessel.

At the time of the bunker delivery, the owner of the M/V GOLDEN DESTINY was Golden Star Marine SA.

On or about August 24, 2018, Integr8 sent an invoice to Harmony in the amount of USD 209,410.00 (430mts at USD 487 per mt). Bennett Dec., **Exhibit 5** at p. 7. According to Integr8's submission in the Rotterdam action fully described below, Harmony declared bankruptcy and never paid for the bunkers Integr8 supplied to the Vessel on August 20, 2018. On May 6, 2020, lntegr8 submitted its claim to the liquidators. See **Exhibit 7** at ¶ 2.3.

B.  **Sale of the Vessel and Change in Name**

On February 26, 2020, Amelia purchased the M/V GOLDEN DESTINY from Golden Star Marine SA. and renamed her M/V AUZONIA. Bennett Dec. **Exhibit 2**.[1]

C.  **Integr8's Claim Against Amelia and the Rotterdam and UAE Proceedings**

On or about September 14, 2020, Integr8 contacted Overseas Marine Enterprises Inc. ("Overseas Marine"), the current operators of the M/V AUZONIA, by email seeking payment for the August 24, 2018 bunker delivery to the Vessel. Bennett Dec., **Exhibit 1**. To this end, Integr8 demanded payment in the amount of US$209,410 plus interest.

On November 30, 2020, Integr8 sent a second email to Overseas Marine demanding payment of US$209,410 plus interest in the amount of US$143,823.93. See **Exhibit 1**.

---

[1] It should be noted that 80 Broad Street, Monrovia, Liberia, is a registration address for offshore entities.

On November 28, 2021, Integr8 arrested the M/V AUZONIA in Rotterdam seeking payment of its invoice to Harmony for the unpaid bunkers. The Rotterdam Court found the arrest to be wrongful under US law and ordered Integr8 to reimburse Amelia for the legal fees incurred in defending the arrest. Bennett Dec., **Exhibit 3**.

Of note, the Dutch Court stated at paragraph 4.4 of its opinion:

> The Preliminary Injunction Judge states, first and foremost, *that Integr8 has no claim against Amelia. After all, Amelia has no obligation to pay the purchase price for the bunker deliveries to Integr8. Amelia is not a party to the purchase agreement concluded between Integr8 and the charterer at that time and there is also no reason to assume that a shipowner becomes debtor in the case of an order of bunker deliveries by a time charterer.* Therefore, the question to be assessed now is whether the claim of Integr8 can be recovered from the ship belonging to Amelia.

Exhibit 7 a ¶ 4.4. (Emphasis added).

Unhappy with the result in Rotterdam, Integr8 proceeded to arrest the Vessel again in the United Arab Emirates ("UAE") on November 19, 2022. Bennett Dec., **Exhibit 4**. This time, it arrested the Vessel as security for its claim of unpaid bunkers. Integr8's subsequent arrest in the UAE is nothing more than a vexatious action to cause Amelia financial hardship. Amelia, as owner of the M/V AUZONIA, is taking steps to post security and will challenge the arrest as it did in the Netherlands.

### D. Integr8's Arbitration Demand

On or about November 25, 2022, Integr8 served on Amelia its Demand for Arbitration ("Demand"). Bennett Dec., **Exhibit 5** at pp. 2-3. The Demand states the arbitral proceedings are to be conducted in New York in accordance with the rules of the Society of Maritime Arbitrators, Inc. In its Demand, Integr8 named Mr. David Martowski as Integr8's party-appointed arbitrator.

3

# ARGUMENT

## POINT I

### THE COURT SHOULD STAY THE ARBITRATION BECAUSE THERE IS NO AGREEMENT BETWEEN INTEGR8 AND AMELIA TO ARBITRATE DISPUTES

The Second Circuit, relying on Supreme Court precedent has made clear that a party cannot be compelled to arbitrate a claim which it has not agreed to arbitrate:

> Arbitration is contractual by nature – "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Thus, while there is a strong and "liberal federal policy favoring arbitration agreements," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 625, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985) (quotations omitted), such agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract.

*Thomson-CSF, S A. v. Am. Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995).

If a claimant seeks to force a party to arbitrate a claim which is not subject to arbitration, it is appropriate for a federal district court to issue a preliminary injunction staying the arbitration followed by a declaration that the parties' dispute is not arbitrable. *See Merrill Lynch Inv. Jvfgrs. v. Optibase, Ltd.,* 337 F.3d 125, 132 (2d Cir. 2003) (affirming district court's grant of preliminary injunction staying arbitration against non-signatory to arbitration agreement); *see also Thomson-CSF,* 64 F.3d at 775 (reversing district court's refusal to grant declaratory and injunctive relief to non-signatory to arbitration agreement).

"Federal courts generally have remedial power to stay arbitration." *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 213 (2d Cir. 2014). Specifically, "where the court determines … that the parties have not entered into a valid and binding arbitration

4

agreement, the court has the authority to enjoin the arbitration proceedings." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011); *see also Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981).

A party seeking a preliminary injunction in connection with staying arbitration has the burden to show: "(1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Optibase,* 337 F.3d at 129 (quoting *Bronx Household of Faith v. Ed. of Educ.,* 331 F.3d 342, 348-49 (2d Cir. 2003)).

Here, as discussed below, Amelia did **not** enter into any contract with Integr8, much less a contract to arbitrate any disputes with Integr8. Because there is no ground by which Integr8 can require Amelia to arbitrate, Amelia is entitled to a preliminary injunction staying the arbitration commenced by Integr8.

**I.      Amelia Will Be Irreparably Harmed If It Is Forced To Arbitrate**

As a matter of law, a party will suffer irreparable harm if it is required "to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Optibase,* 337 F.3d at 129 (quoting *Maryland Casualty Co. v. Realty Advisory Ed. on Labor Relations,* 107 F.3d 979, 985 (2d Cir. 1997)).  Here, Amelia would suffer this very type of irreparable harm if it was required to participate in the arbitration demanded by Integr8 (or if it had to seek to vacate any award obtained by Integr8).  Hence, this Court should hold that Amelia has demonstrated that it will suffer irreparable harm.

999998.05409/129987306v.1

## II. Amelia Is Likely To Prevail On The Merits

### A. Amelia is Not a Signatory to an Agreement to Arbitrate

The record is clear in that Amelia is not a party to the bunker supply contract between Integr8 and Harmony and thus, it is **not** bound by the arbitration agreement contained in Integr8's General Terms and Conditions. *See, e.g., Stolt-Nielsen Transp. Group B.V v. Edible Oil Trading Corp.,* No. 06 Civ. 0703 (NRB), 2007 WL 194182, at *3 (S.D.N.Y. Jan. 24, 2007) (holding defendant was not party to contract containing the arbitration clause because defendant was not listed in the contract containing the arbitration agreement). *See also China Shipping Container Lines Co. Ltd. v. Big Port Services DMCC*, 803 Fed. Appx. 481 (2d Cir. 2020) ("Summary Order").

While Integr8's confirmation receipt includes language identifying the "Buyer" as "Harmony Innovation Shipping Ltd and Joint and Severally Owners/Managing Owners/Operators/Managers/Disponent Owners/Charterers. . .", this language does not actually bind any other party to the contract aside from Integr8's contractual partner, i.e. Harmony. Even if assuming *arguendo* the above language binds the owner of the Vessel, which is denied, Amelia was not the owner of the Vessel at the time the contract was entered into between Harmony and Integr8, or even at the time the bunkers were supplied to the Vessel. In fact, the owner of the Vessel at the time the bunkers were supplied to the Vessel was non-party Golden Star Marine SA. Amelia did not become the owner of the Vessel until almost two years later. Therefore, there can be no argument that Amelia is bound by the contract Integr8 entered into with non-party Harmony, let alone an arbitration provision that is alleged to have been incorporated into such contract.

### B. Amelia Cannot be Bound as a Non-Signatory to an Arbitration Agreement That Integr8 Might Have with Another Party

A party cannot be compelled to arbitrate unless it has entered into an agreement to do so. Courts have recognized several theories by which non-signatories may be bound to the arbitration agreements of others. *See*, *e.g.*, *Thomson- CSF,* 64 F.3d at 776. These theories arise out of common law principles of contract and agency law: 1) incorporation by reference; 2) assumption; 3) veil-piercing/alter ego; 4) estoppel; and 5) agency. *Id* None of these theories provide Integr8 with any comfort here. In examining whether a non-signatory should be bound to an agreement to arbitrate, this Court cannot bind a non-signatory unless "the totality of the evidence supports an objective intention to agree to arbitrate." *Stolt-Nielsen*, 2007 WL 194182, at *3 (quoting *Sarhank Group v. Oracle Corp.,* 404 F.3d 657, 662 (2d Cir. 2005)).

1. Incorporation by Reference

A non-signatory to an agreement to arbitrate may be compelled to arbitrate when there exists a separate contractual relationship with the non-signatory incorporating the existing arbitration clause. *See Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 505–506 (2d Cir.1965) (separate agreement with non-signatory expressly "assum[ing] all the obligations and privileges of [signatory party] under the ... subcharter" constitutes grounds for enforcement of arbitration clause by non-signatory); *Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.,* 782 F.Supp. 28, 31 (S.D.N.Y. 1992); *Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.,* 658 F.Supp. 809, 813 (S.D.N.Y. 1987) (if a "party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories ... who are linked to that bill through general principles of contract law or agency law may be bound"). This theory

7

is inapplicable in the instant case because there is **no** agreement at all between Amelia and Integr8. Thus, Amelia cannot be bound under an incorporation theory.

2. Assumption

In the absence of a signature, a party may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate. *See Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir. 1991) (flight attendants manifested a clear intention to arbitrate by sending a representative to act on their behalf in arbitration process), *cert. denied,* 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991). Courts view a party's disavowal of arbitrability as evidence supporting a finding that the non-signatory has not assumed the agreement to arbitrate. *Thomson-CSF,* 66 F.3d at 777; *Stolt-Nielsen,* 2007 WL 194182, at *4 (quoting *Thomson-CSF,* 66 F.3d at 777); *Shaw Group, Inc. v. Triplefine Int'l Corp.,* No. 01 Civ. 4273, 2001 WL 883076, *2 (S.D.N.Y. Aug. 3, 2001).

Here, Amelia has disavowed arbitrability since Integr8 demanded arbitration. Therefore, the assumption theory also does not apply.

3. Veil-Piercing/Alter Ego

There is no suggestion that Harmony has a corporate relation to Amelia or that Amelia somehow controlled or dominated Harmony. Therefore, this theory likewise is inapplicable.

4. Estoppel

As explained by the Second Circuit:

> As these cases indicate, the circuits have been willing to estop a **_signatory_** from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. ***As the district court pointed out, however, "[t]he situation here is inverse: E & S, as signatory, seeks to compel Thomson, a nonsignatory." While E & S suggests that this is a non-distinction, the nature of arbitration makes it important.*** Arbitration is strictly a matter of contract; if the parties have not agreed to arbitrate, the

8

999998.05409/129987306v.1

> courts have no authority to mandate that they do so. In the line of cases discussed above, ***the courts held that the parties were estopped from avoiding arbitration <u>because they had entered into written arbitration agreements</u>, albeit with the affiliates of those parties asserting the arbitration and not the parties themselves. Thomson, however, cannot be estopped from denying the existence of an arbitration clause to which it is a signatory <u>because no such clause exists. At no point did Thomson indicate a willingness to arbitrate with E & S.</u> Therefore, the district court properly determined these estoppel cases to be inapposite and insufficient justification for binding Thomson to an agreement that it never signed.***

*Thomson-CSF,* 64 F.3d at 779 (emphasis added) (internal citation omitted).

> ***[I]t matters whether the party resisting arbitration is a signatory or not***. *See Thomson-CSF,* 64 F.3d at 779. "[A] court should be wary of imposing a contractual obligation to arbitrate on a non-contracting party . . . ." *Smith/Enron Cogeneration Ltd. P'ship* v. *Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 97 (2d Cir. 1999); *see Choctaw Generation Ltd. P'ship* v. *Am. Home Assur. Co.,* 271 F.3d 403, 406 (2d Cir. 2001). Thus a willing non-signatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an "alternative estoppel theory," *Thomson-CSF,* 64 F.3d at 779, which takes into consideration "the relationships of persons, wrongs and issues," *Choctaw,* 271 F.3d at 406. But a willing signatory (such as Optibase) seeking to arbitrate with a non-signatory that is unwilling (such as MLIM) must establish at least one of the five theories described in *Thomson-CSF,* 64 F.3d at 776-80.

*Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.,* 337 F.3d 125, 131 (2d Cir. 2003) (first emphasis added, second emphasis in original).

Here, Amelia is a non-signatory to the Integr8 arbitration agreement. Hence, Integr8 cannot use estoppel as a basis to bind Amelia to its arbitration agreement and therefore, the estoppel theory likewise is inapplicable.

5. Agency

There is no suggestion that there was, or has ever been, an agency relationship between Harmony and Amelia. Therefore, this theory is inapplicable.

9

POINT II

THE COURT SHOULD STAY THE ARBITRATION BECAUSE A COURT OF COMPETENT JURISDICTION ALREADY DETERMINED THAT INTEGR8 HAS NO CLAIM AGASINT AMELIA

Courts apply the principles of comity to preclude re-litigation of substantially the same issues which have already been determined by a foreign court based on the doctrine of collateral estoppel. *Mosha v. Yandex Inc.*, 2019 U.S. Dist. LEXIS 169526, at *13-15 (S.D.N.Y. Sep. 30, 2019). The doctrine of *res judicata* broadly encompasses the notion that "a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies[.]" *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 268 (2d Cir. 1977) (quoting *S. Pac. R. Co. v. United States*, 168 U.S. 1, 48 (1897)). The doctrine *of res judicata* embraces two concepts: issue preclusion and claim preclusion. *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985). Issue preclusion, often referred to as collateral estoppel, is succinctly defined as "the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided." *Murphy*, 761 F.2d at 879. The

The Second Circuit has held that collateral estoppel requires two levels of inquiry: "(1) the court must determine if the issues are identical and the issues necessarily decided in the prior action are decisive in the present action; and, (2) the court must determine whether the party to be bound had a full and fair opportunity to contest the determination." *Alesayi Beverage Corp. v. Canada Dry Corp.*, 947 F. Supp. 658, 666 (S.D.N.Y. 1996) (citing *Conte v. Justice*, 996 F.2d 1398, 1400 (2d Cir. 1993)). It is well-settled in this Circuit that literal privity is not required for *res judicata* to apply. *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Privity exists when the interests of a nonparty were adequately represented in the initial action. *Waldman v. Vill.*

10

*of Kiryas Joel*, 39 F. Supp. 2d 370, 382 (S.D.N.Y. 1999), *aff'd*, 207 F.3d 105 (2d Cir. 2000). A nonparty's interests can be adequately represented when they had a sufficiently close relationship with a defendant in the prior action to support preclusion. *Id.; see also Melwani v. Jain*, 02 Civ. 1224, 2004 U.S. Dist. LEXIS 16867, 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) (applying *res judicata* even when two companies were separate entities, because they had overlapping shareholders, officers, and directors).

Here, it has already been determined by the Court in Rotterdam that there is no agreement between Integr8 and Amelia to arbitrate disputes and, in fact, under US law Integr8 has no claim against Amelia. Bennett Dec., **Exhibit 3**.

## CONCLUSION

Amelia has shown that it will suffer irreparable harm if forced to arbitrate a dispute that it has not agreed to arbitrate. It likewise has shown that it is likely to prevail on the merits of this dispute, as there is no arbitration agreement signed by Amelia. A party which seeks to arbitrate a dispute with another party has the burden of proving arbitrability. Here, that burden has not been, and cannot be, met. There is no contractual agreement between Integr8 and Amelia to arbitrate.

Likewise, none of the conditions present exist which would permit the Court to bind non-signatory Amelia to Integr8's arbitration agreement. Therefore, Amelia respectfully requests that the Court grant Amelia's motion for a preliminary injunction staying the New York arbitration from proceeding forward, and order that Integr8 pay Amelia its reasonable costs and attorneys' fees resulting from Integr8's demand of arbitration and its arrest of the Vessel in Rotterdam and the UAE.

Dated: December 5, 2022
      New York, New York

Respectfully submitted,

By:    /s/ *William R. Bennett*

William R. Bennett III
Noe S. Hamra
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000
Email: William.Bennett@blankrome.com
        Noe.Hamra@blankrome.com

Attorneys for Petitioner,
*Amelia Maritime Group Ltd.*