```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
AMELIA MARITIME GROUP LTD.,           :
                                      :
              Petitioner,             :
                                      :      22 CV 10269 (JSR)
         v.                           :
                                      :
INTEGR8 FUELS INC.,                   :
                                      :
              Respondent.             :
------------------------------------------------------X
```

## SECOND DECLARATION OF YAMAN ALHAWAMDEH

Yaman Alhawamdeh declares under penalty of perjury that the following is true and correct:

1. I have made a Declaration dated 8 February 2023 filed in the above-mentioned proceedings (the "First Declaration").

2. I make this second Declaration based on my own personal knowledge of the facts set forth herein (the "Second Declaration").

3. I have read the Declaration of Hari Gopala Krishna Vijapurapu dated 16 February 2023 ("Vijapurapu Declaration").

4. Mr. Vijapurapu alleges in paragraph (10) of the Vijapurapu Declaration that my First Declaration is inaccurate and incorrect. As set out below, I contest several assertions made in the Vijapurapu Declaration and I confirm to the Court that my First Declaration is accurate, correct and in accordance with the UAE Federal Law No. 26 of 1981 (the "UAE Maritime Law").

5. Although the statement set forth in paragraph 14 of the Vijapurapu Declaration is accurate, it fails to provide all of the relevant facts. Integr8 did initially file the substantive claim in the Sharjah Court of First Instance (Case No 9005/2022) against

both Amelia Maritime Group Limited ("Amelia") and Harmony Innovation Shipping Ltd ("Harmony") and initially sought a judgment against both of them jointly. However, on 1 February 2023, Integr8 made a submission before the Sharjah Court which amended its substantive claim to seek judgment only against Harmony. Therefore, when I issued my First Declaration, Integr8 had indeed been seeking substantive recovery only from Harmony and the "AUZONIA," or any security placed to release "AUZONIA," and was not seeking any substantive recovery from Amelia in the UAE.

6. The statements set forth in paragraphs 15 and 16 of the Vijapurapu Declaration are incorrect and demonstrate a lack of understanding of the UAE civil law system. Unlike a common law system, there is no form of *in rem* actions under UAE law and/or practice. In fact, a vessel such as the "AUZONIA" does not have any legal personality and any claim against a vessel itself would be rejected under UAE law. This has been confirmed by a number of supreme court judgments / precedents. In support of this aspect of UAE law, I attach at Exhibit 1 of this Second Declaration a copy of a precedent issued by the UAE Federal Supreme Court, one of the highest courts in the UAE, in appeals number 233/2016 Commercial and 304/2016 Commercial, along with an English translation of the same[1]. However, UAE Maritime Law and practice does recognize the concept that a vessel itself, or any security placed to release the vessel from arrest, respond to maritime claims against its previous owners or charterers. Additionally, the fact that Integr8 has already obtained an arrest order against the "AUZONIA" and is seeking to maintain such an order and enforce a substantive

judgment against Harmony based on this order may generally be described as an action *in rem*. However, to reiterate, the concept of an *in rem* action is not identified or recognized under UAE law or practice.

7. Addressing paragraph 18 of the Vijapurapu Declaration, the arrest warrant and the minutes of arrest were issued by the Sharjah court bailiff who attended onboard to enforce the arrest order. However, the arrest warrant and minutes of arrest cannot be used as a record of Integr8's claim/demands before the Sharjah Courts. The Sharjah Courts will rely on the final demands and submissions filed by Integr8, not on the court bailiff's understanding of the contents of Integr8's claim upon enforcing the arrest order. Therefore, the arrest warrant and minutes of arrest do not constitute substantive evidence of Integr8's extant claim or pleas as a matter of UAE law or practice.

8. Paragraph 19 of the Vijapurapu Declaration is also incorrect. It appears that Mr. Vijapurapu has not reviewed the arrest order dated 18 November 2022 against the "AUZONIA" (the "Arrest Order"). The Sharjah Court granted the Arrest Order on the basis of Integr8's claim against Harmony, not Amelia. This is reflected in the Arrest Order itself which explicitly: (a) stated that Harmony, which was referred to in the Arrest Order as the second defendant, owes Integr8 a maritime debt based on bunker supply invoices and a bunker delivery receipt signed by the master of the "AUZONIA"; and (b) confirmed that this constitutes a maritime debt that qualifies for arresting the "AUZONIA." A copy of the Arrest Order, along with an English translation of the same, is attached at Exhibit 2 of this Second Declaration.

9.  Paragraphs 20, 21 and 22 of the Vijapurapu Declaration suggest that a vessel may be arrested after its sale to a third party only if there is one of the "priority debts" listed in Article 84 of the UAE Maritime Law. This too is incorrect. Arresting vessels as security in the UAE is mainly governed by articles 115 – 122 of the UAE Maritime Law. Article 115 of the UAE Maritime Law gives the right to arrest a vessel calling at any UAE port to secure a "maritime debt. Maritime debts are broadly defined under Article 115 of the UAE Maritime Law and include, for example, goods or materials wherever supplied to a ship for her operation or maintenance, which includes bunkers as was the case here when Integr8 supplied bunkers to the "AUZONIA."

10. A creditor's right to arrest a vessel to which the maritime debt relates does not depend on whether the vessel's current or previous owners or charterers engaged in the conduct creating the maritime debt. In this regard, Article 116(1) of the UAE Maritime Law states that:

    "1. Any person seeking to recover the debts referred to in the preceding Article <u>may arrest the vessel to which the debt relates</u>, or any other vessel owned by the debtor if such other vessel was owned by him at the time the debt arose even if the vessel is ready to sail" (Unofficial translation from the original Arabic text).

11. Article 117(1) of the UAE Maritime Law further provides that:

    "1. <u>If the vessel was chartered to a charterer</u> together with the right of navigational management thereof, and he alone is responsible for a maritime debt connected therewith, <u>the creditor may arrest the said vessel</u> or any other vessel owned by the same charterer, and he may not, in respect of that debt, arrest any other vessel of the disponent owner." (Unofficial translation from the original Arabic text).

12. In addition, Articles 115 – 122 of the UAE Maritime Law do not include any provisions preventing a creditor from arresting a vessel to which the maritime debt relates if such debt arose before the vessel's sale to a third party. Accordingly, even if a vessel to

- 5 -

       which a maritime debt relates was sold after the date on which the maritime debt arose, such a vessel may be arrested by the creditor under UAE law.

13. The Vijapurapu Declaration manifests confusion between: (a) "priority debts" listed in article 84 of the UAE Maritime Law which give creditors priority to collect sale proceeds of a vessel in the event of judicial enforcement against such a vessel; and (b) the right to arrest a vessel as a security for a maritime debt under articles 115 – 122 of the UAE Maritime Law.

14. In paragraph 22 of the Vijapurapu Declaration Mr. Vijapurapu admits he was instructed by Amelia to defend Integr8's substantive claim before the Sharjah Court. However, in this respect, I highlight that Amelia has also disputed in its submissions before the Sharjah Court on 22 February 2023 the fact that Integr8 has indeed commenced arbitration proceedings in relation to this matter in the USA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 8 March 2023 at Dubai, United Arab Emirates.

*[signature]*

_____